Filed 6/23/22  P. v. Garcia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO JAVIER GARCIA,<br><br>    Defendant and Appellant. | D079152<br><br><br><br>(Super. Ct. No. FWV20000697) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Cara D. Hutson, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and A. Natasha Cortina, Assistant Attorneys General, Arlene A. Sevidal, Andrew S. Mestman and Susan Elizabeth Miller, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Francisco Javier Garcia of nineteen counts of sex offenses involving his stepdaughter: lewd acts upon a child under age 14

(Pen. Code,[1] § 288, subd. (a); counts 1-11), lewd acts upon a child aged 14 or 15 (§ 288, subd. (c)(1); counts 12-15), oral copulation of a person under age 18 (§ 287, subd. (b)(1); count 16), sexual penetration of a person under age 18 (§ 288a, subd. (b)(1); count 17), unlawful sexual intercourse (§ 261.5, subd. (c); count 18), and forcible rape (§ 261, subd. (a)(2); count 19). The court sentenced Garcia to a total term of 36 years 8 months in state prison.

On appeal, Garcia contends (1) the evidence was insufficient to show he committed the crime of forcible rape as charged in count 19; (2) the court's imposition of a full consecutive term on count 19 is unauthorized and (3) the sentences imposed on counts 3 through 6, 8 through 11, 14 and 15 must be stayed under section 654. He asks us to reverse the forcible rape conviction and remand for resentencing. The People concede that the court improperly sentenced Garcia to a full consecutive term on count 19 under section 667.6, subdivision (d), but argue it is appropriate to remand the matter for the court to exercise its discretion to sentence Garcia under subdivision (c) of section 667.6. We accept that concession and vacate Garcia's sentence with directions that on remand the court must exercise its discretion whether to sentence Garcia under section 667.6, subdivision (c) to a full consecutive term on count 19. Otherwise, we reject Garcia's sufficiency of the evidence argument and arguments as to section 654, at least as it read as of the time of his sentencing. At resentencing the parties and the court will have the opportunity to address application of amended section 654 to Garcia's sentence.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution's Evidence*

[1] Undesignated statutory references are to the Penal Code.

2

Jane Doe, born in 1997, is Garcia's stepdaughter.  Garcia married Doe's mother when Doe was about two years old.  Doe grew up considering Garcia to be her father; she was not told until she was 11 years old that he was not her biological father.  She described their early relationship as only sometimes typical and normal, as she described Garcia as "a very strict person."  Doe's family lived in small apartments and moved a lot.  At times, Garcia, Doe's mother and Doe's siblings slept in the same room; the children sometimes took turns sleeping in the same bed as their parents.

When Doe was seven, Garcia began touching her inappropriately.  The first incident (count 1) occurred while Doe slept with her parents in their bed, and Garcia touched her vagina both over and under her bed clothes while he was having intercourse with Doe's mother.  Doe did not say anything because she was confused about what was going on.

Garcia's inappropriate touching and sexual abuse continued until Doe was 18 and at times occurred a few times a week on and off.  At trial, Doe was able to describe several specific incidents.  One incident (counts 2 through 6) happened when she was between 12 and 13 years old and Garcia asked her to stay home from school.  He removed her clothing, touched her all over her body and had intercourse with her.  This was not the first time Garcia had intercourse with Doe; she just could not recall specifically the other earlier incidents.  Doe explained that similar acts had occurred between the time she was seven years old and age 12, but she could not remember how old she was or where she was.  Another incident (counts 7 through 11)

3

occurred when she was 13 and Garcia purchased shoe glue that he told her to "huff." He then touched Doe inappropriately and had intercourse with her.[2]

Doe started to realize things were not appropriate when she was 12 or 13, but she did not know how to say no or get out of it. She was too scared to say anything to her siblings, her mother, friends or teachers. Garcia made it seem like it was okay, or he would tell Doe that nobody would believe her or understand it, not even her mother. According to Doe, if she ever said no or things did not happen the way Garcia wanted, he would hit her with a belt, causing her to become scared of him.

When Doe was 14, Garcia forced her to put her mouth on his penis, causing her to gag. Another incident (counts 13 through 15) occurred when Doe was 15 years old a few days after they had moved to a new house and Garcia slept in her bedroom. On that occasion, he touched Doe inappropriately and made her touch him; he then had intercourse with her.[3] After Doe turned 17, Garcia's sexual abuse happened a little less frequently, but he continued with the same touching and intercourse as

---

[2]  According to the prosecutor in closing arguments, the incidents Doe described when she was 12 and 13 years old were encompassed within counts 2 through 11, which pertained to when Doe was that age. She said: "[Doe] testified that there was no gap between the [seventh] birthday to the 12th birthday. There were a lot of things that happened but she just did not recall specific incidents." The prosecutor pointed to Doe's description of the day she stayed home from school, and the time Garcia made her use the shoe glue.

[3]  The prosecutor explained that counts 13 and 15 occurred when Doe was 14 and 15 years old; though she did not specify it precisely, her argument suggests that count 15 occurred when Doe was 15 years old and Garcia slept in Doe's room in the new house, and count 13 occurred when Doe was 14 and Garcia would kiss her on the mouth, touch her breasts and buttocks, and have intercourse with her.

before (count 18).  Garcia's acts included him orally copulating Doe (count 16) or digitally penetrating her (count 17), or forcing Doe to orally copulate him. Doe described the oral copulation as a "continuous thing."

Doe recalled another incident, charged as count 19, when she was eighteen and visiting her aunt's house with her sister, her sister's boyfriend, and a female cousin.  No adults were home and they were all spending time in a bedroom.  When Doe's aunt returned home with Garcia, Garcia became angry that Doe and the others were unsupervised.  Doe left to go home, where Garcia was waiting for her in her bedroom.  He told her it was not okay that they were all in a bedroom alone, and that he was going to make Doe's sister break up with her boyfriend.  Doe believed that was unfair; she responded that she did not want him to do that.  Garcia told Doe that she "knew what she had to do" in order for him not to make them break up.  Doe understood that to mean she would have to have sex with him.  She got upset and told him that was not fair either; but Garcia was upset and told Doe that he would tell her sister she had to break up with her boyfriend and make it out to be Doe's fault.  Doe started to cry, but eventually gave in.  The prosecutor asked Doe why she did so in the following colloquy:

"[Prosecutor:]  Why did you give in?

"[Doe:]  Because I knew that there was no changing what he wanted. He was going to get it regardless.

"[Prosecutor:]  Regardless of whether you agreed or not?

"[Doe:]  Yes.

"[Prosecutor:]  Did you feel like you had a choice at that point?

"[Doe:]  No.

"[Prosecutor:]  So did you and the defendant, did the defendant end up having sexual intercourse with you that day?

5

"[Doe:] Yes."

Later that evening, after Garcia checked that the rest of the family was asleep, he came back to Doe's room and locked the door, then began to kiss Doe on the mouth while she laid in bed. Doe had gone to bed fully clothed, still in her jeans. When Garcia tried to tug on her shirt so she would take it off, Doe said she did not want to. Garcia got upset; Doe started crying and removed her shirt, since she knew he was not going to listen to her no matter what she said. Doe left her jeans on, trying to convince Garcia to let her be and telling him she really did not want to. Garcia ignored her and unzipped her pants, putting his hand down them to touch Doe. Doe pulled her pants off, then Garcia had intercourse with her while she cried. Garcia got upset at Doe because she would not stop crying.

After the abuse came to light, a police detective spoke with Doe's mother, who told him that Garcia told her he had a relationship with Doe when she was about 15 or 16 years old. The detective set up a pretext call between Doe and Garcia, in which Garcia stated he could not change the past; he knew he had hurt her, it was his fault and he was sorry.

*Defense Evidence*

Garcia denied Doe's claim that he touched her inappropriately when she was seven years old. He denied touching her in a sexual manner when she was 12 or 13 years old. He denied asking her to stay home from school, explaining that education was important and he and his wife pushed the children to go to school. He testified he never had a physical relationship with Doe or intercourse with her when she was in middle school. According to Garcia, he saw Doe like a daughter and could not see himself having sex with her. He denied the glue-sniffing incident. Garcia admitted scolding Doe and the others when he found them in the bedroom, but denied telling Doe he

6

was going to make her sister break up with her boyfriend if Doe did not have sex with him, or having sex with Doe on that occasion.  He admitted that he and Doe began a physical relationship after she turned 18; her behavior was different, he started seeing her differently, and he made the "wrong decision."  Garcia testified he respected Doe's decision when she did not want to have sex.  He testified their relationship lasted close to a year, then they mutually decided to end it.  When Garcia admitted wrongdoing to Doe on the phone, he was referring to his adult relationship with her.

DISCUSSION

I. *Sufficiency of Evidence of Forcible Rape on Count 19*

Garcia contends that there is insufficient evidence of the offense of forcible rape as charged in count 19.  Specifically, he argues there is no evidence the intercourse with Doe, an 18-year-old adult at the time, was committed by means of duress, requiring reversal of his conviction.  Garcia compares this case to *People v. Espinoza* (2002) 95 Cal.App.4th 1287, in which the Court of Appeal concluded there was insufficient evidence of duress in accomplishing a lewd act.  (*Id.* at p. 1321.)  Though Garcia acknowledges that he threatened to break up Doe's sister's relationship, he asserts the threat was made before there was any attempt to have sex with Doe, and the intercourse was not contemporaneous with that statement.  Garcia also argues his discipline "had nothing to do with . . . Doe's adult sexual relationship with [him]."  He maintains he "simply did not use any direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce . . . Doe, a reasonable person of ordinary susceptibilities, to acquiesce to an act of sex that she otherwise would not have submitted."  Garcia characterizes Doe as being "free to leave" on that occasion, and states that "[a]s in *Espino[z]a*, while it is clear that . . . Doe felt she had to give in to sex,

7

no evidence was introduced that her decision to give in on this occasion was based on anything Garcia had done to her."

A. *Standard of Review*

The review principles are well settled. When we assess the sufficiency of the evidence to support a conviction, " '[w]e " ' "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " ' " (*People v. Parker* (2022) 13 Cal.5th 1, 58.) This requires us to consider whether " ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) "[I]n reviewing the sufficiency of the evidence, a court 'err[s] in focusing on evidence that did not exist rather than on the evidence that did exist.' [Citation.] The question is not whether the jury reasonably could have reached a different conclusion. Instead, it is whether any reasonable trier of fact could have reached the same conclusion as the jury." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1073.)

This court presumes in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Navarro* (2021) 12 Cal.5th 285, 302; *People v. Thomas, supra,* 15 Cal.App.5th at p. 1073.) " ' "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." ' " (*People v. Booker* (2011) 51 Cal.4th 141, 172.)

B.  *Legal Principles*

Forcible rape is sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another."  (§ 261, subd. (a)(2).)  Duress for purposes of this offense means "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted."  (§ 261, subd. (b).)  All of the circumstances, including matters such as the victim's age and relationship to the defendant, are factors to consider in appraising the existence of duress.  (§ 261, subd. (b); see *People v. Thomas*, *supra*, 15 Cal.App.5th at p. 1072.)

The legal definition of duress is objective in nature and not dependent on the response exhibited by a particular victim.  (See *People v. Soto* (2011) 51 Cal.4th 229, 246 [analyzing section 288, subdivision (b)(1) as to aggravated lewd acts on a child under age 14, under which duress was defined by reference to direct or implied threats " ' "sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted" ' "]; accord, *People v. Cochran* (2002) 103 Cal.App.4th 8, 13, disapproved on other grounds in *Soto*, at p. 248, fn. 12.)  "Because duress is measured by a purely objective standard, a jury could find that the defendant used threats or intimidation to commit [the offense] without resolving how the victim subjectively perceived or responded to this behavior.  . . .  [T]he focus must be on the defendant's wrongful act, not the victim's response to it."  (*Ibid*.)

Duress usually involves psychological coercion. (See *People v. Cochran*, *supra*, 103 Cal.App.4th at p. 15 ["The very nature of duress is psychological coercion"]; see also *People v. Veale* (2008) 160 Cal.App.4th 40, 48 [quoting and following *Cochran*].) In *Cochran*, this court explained that "[a] threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. . . . [S]uch a threat also represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*Cochran*, at p. 15.)

C. *Analysis*

We do not consider the evidence here to present a close case. Doe considered Garcia her father. Even though Doe was 18 years old at the time Garcia committed the rape of count 19, Garcia began his abuse when she was just seven, and at times used violence by striking her with a belt when she did not comply with his demands. Garcia was still in a position of authority over Doe even as an adult, as Doe continued to live with him and her mother in the family home. On the occasion that Garcia encountered Doe, Doe's sister and Doe's sister's boyfriend in the bedroom, he used that authority later that day back in Doe's bedroom, threatening that he would force Doe's sister to break up her relationship and blame it on Doe. Doe understood from the history of abuse that Garcia wanted her to engage in sex acts; only then would she avoid that outcome. The jury reasonably concluded this intimidated and influenced Doe to make her submit to his sex acts.

We are unpersuaded by Garcia's argument that his threat was separate in time and not contemporaneous, but rather occurred before his efforts to

10

engage in intercourse with Doe. That his threat was separated from the sex acts by a few hours does not matter, particularly where the evidence shows at the time of Garcia's threat Doe immediately understood what was expected of her to avoid the consequences of that threat.

*Espinoza* likewise is of no assistance to Garcia. In that case, the defendant was convicted of molesting his 12-year-old daughter, who had only lived with him briefly before he began molesting her. (*People v. Espinoza*, *supra*, 95 Cal.App.4th at pp. 1292-1294.) Observing that the defendant did not "grab, restrain, or corner [the victim]" during the incident and that the victim "did not cry, and she offered no resistance" (*id.* at p. 1320), *Espinoza* held there was insufficient evidence of duress. It relied in part on statements from *People v. Hecker* (1990) 219 Cal.App.3d 1238, disapproved on other grounds in *People v. Soto* (*supra*, 51 Cal.4th at p. 248, fn. 12) that " ' "[p]sychological coercion" without more does not establish duress' " and " '[a]t a minimum there must be an implied threat of "force, violence, danger, hardship or retribution." ' " (*Espinoza*, at p. 1321.) The *Espinoza* court reasoned: "What is missing here is the ' "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citation.] Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' [Citation.] No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind. While it was clear that [the victim] was afraid of defendant, no evidence was introduced to show that this fear was based on anything defendant had done other than to

11

continue to molest her.  It would be circular reasoning to find that her fear of molestation established that the molestation was accomplished by duress based on an implied threat of molestation." (*Id*. at p. 1321.)

In *Cochran*, this court rejected the above-mentioned statements in *People v. Hecker* as "overly broad." (*People v. Cochran, supra*, 103 Cal.App.4th at p. 15, citing *People v. Hecker*, *supra*, 219 Cal.App.2d at p. 1250.)  We continue to reject the language on which *People v. Espinoza*, *supra*, 95 Cal.App.4th 1287 based its holding, and decline to follow *Espinoza* on that basis.  Further, unlike *Espinoza*, Doe had been living with Garcia, her stepfather, for years, and his abuse began when she was very young.  As we have concluded for the reasons stated above, a rational fact finder could conclude beyond a reasonable doubt that Doe acted under duress when Garcia came into her bedroom and engaged in the acts charged in count 19.

## II. *Sentencing Issues*

In sentencing Garcia, the trial court deemed count 1 the principal term, imposing a 6-year midterm.  It imposed consecutive terms of two years (one-third the midterm) for each of counts 2 through 11, 8 months (one-third the midterm) for each of counts 12 through 18, and a full consecutive six-year term on count 19.  The court followed the probation officer's recommendation

and sentenced Garcia on count 19 under section 667.6, subdivision (d).[4] Both defense counsel and the prosecution stated their belief that the court would correctly impose a full consecutive term on count 19.

A. *Claim of Unauthorized Sentence on Count 19*

Garcia contends the court's imposition of a full consecutive term on count 19 under section 667.6, subdivision (d) is not legally authorized. The People concede that the court should remand the case for resentencing of count 19. They point out that section 667.6, subdivision (d), which provides that a full separate and consecutive term must be imposed for designated violent sex offenses "if the crimes involve separate victims or involve the

---

[4] Section 667.6, subdivision (d), provides: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions. . . . [¶] . . . The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison." The offenses listed in subdivision (e) are rape in violation of paragraph (2), (3), (6), or (7) of subdivision (a) of section 261; rape in violation of paragraph (1), (4), or (5) of subdivision (a) of former section 262; rape or sexual penetration in concert in violation of section 264.1; sodomy in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of section 286; lewd or lascivious act in violation of subdivision (b) of section 288; continuous sexual abuse of a child in violation of section 288.5; oral copulation in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d) or (k), of section 287 or of former section 288a; sexual penetration, in violation of subdivision (a) or (g) of section 289; assault with intent to commit a specified sexual offense as a present offense under subdivision (c) or (d), in violation of section 220; and an offense committed in another jurisdiction that includes all of the elements of an offense specified in this subdivision, as a prior conviction under subdivision (a) or (b). (§ 667.6, subd. (e).)

same victim on separate occasions," applies only when a defendant has been convicted of *two or more* of the designated offenses. (See *People v. Jones* (1988) 46 Cal.3d 585, 595.) Here, however, Garcia was convicted of only one of the enumerated sex offenses: forcible rape in violation of section 261, subdivision (a)(2). The People assert that the trial court should be permitted on remand to decide whether section 667.6, subdivision (c) applies, and to exercise its sentencing discretion accordingly.

We accept the People's concession. Section 667.6 is a more severe consecutive sentencing alternative to the section 1170.1 formula for multiple felony convictions. (*People v. Jones*, *supra*, 46 Cal.3d at p. 592.) Section 667.6, subdivision (d), which mandates a full, separate and consecutive term, applies when a defendant stands convicted of more than one enumerated sex offense. (*Jones,* at p. 595; *People v. Goodliffe* (2009) 177 Cal.App.4th 723, 727, fn. 10; *People v. Rojas* (1988) 205 Cal.App.3d 795, 798-799.) Section 667.6, subdivision (c)[5] applies when a defendant has multiple current felony convictions but, as here, only one is for an enumerated sex offense. (*Jones*, at p. 600.) In such circumstances, subdivision (c) of section 667.6 "vests the sentencing court with discretionary authority to impose a full, consecutive term for [that] conviction . . . ." (*Jones,* at p. 600.) That is, the court "may

---

[5]     Subdivision (c) of section 667.6 provides: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison."

impose a full, consecutive sentence under subdivision (c) for each such conviction or, instead, it may apply the standard consecutive sentencing formula in section 1170.1." (*Jones,* at p. 593.) We thus reverse that portion of the judgment imposing a full, separate and consecutive term for count 19, and remand the matter to the trial court with directions to exercise its discretion under section 667.6, subdivision (c) whether to sentence Garcia to a full consecutive term on count 19. We express no opinion on how the court should exercise its discretion.

B. *Application of Section 654*

Though we hold the matter must be remanded for resentencing to allow the court to exercise its discretion under section 667.6, subdivision (c), we disagree with Garcia's contention that certain counts must be stayed under section 654, at least as that statute read at the time of his sentencing.

During the sentencing hearing, Garcia's counsel asked the court to find section 654 applicable to counts 2 through 6, 7 through 11, and 13 through 15. He explained that counts 2 through 6 encompassed the acts that occurred when Garcia asked Doe to stay home from school and remain at home with him, counts 7 through 11 encompassed the acts that occurred when Garcia asked Doe to stay home from school and "huff" glue together, and counts 13 through 15 encompassed the acts that occurred after the family moved to a new home and Garcia slept with Doe in her bedroom. The People argued that section 654 did not apply to any of the counts; that each touching of a different body part or each breast was considered a separate count, and there was ample evidence Garcia committed each of the charges even if it was one "transaction." They asked the court to sentence Garcia consecutively on each of the counts to one-third the midterm. The court sentenced Garcia without mentioning section 654.

15

1. *Legal Principles and Standard of Review*

At the time of Garcia's sentencing, section 654, subdivision (a), provided: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."[6] "[I]f a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136; see also *People v. Mendoza* (2022) 74 Cal.App.5th 843, 853.) "Under section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]' [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant [the] opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; see *People v. Gaynor* (2019) 42 Cal.App.5th 794, 804 ["law is clear" that course of conduct divisible in time, even if directed to one objective, may permit

_____

6    Effective January 1, 2022 (Stats. 2021, ch. 441, § 1), section 654, subdivision (a) provides in part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Under newly amended section 654, a trial court now has the discretion to punish a defendant under any of the applicable laws. Garcia did not address application of the new statute in his reply brief, filed shortly after the amended law took effect. Because the matter will be remanded for resentencing, the parties and court will have the opportunity on remand to address Garcia's sentence under amended section 654. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 673.)

multiple punishment], quoting *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)

Decisions interpreting section 654 have extended its protection to cases in which there are several offenses committed during a course of conduct deemed to be indivisible in time. (*People v. Hicks* (1993) 6 Cal.4th 784, 789, 791.) When the defendant has committed multiple sex offenses against a single victim as here, section 654 does not preclude separate punishment when the offenses occur during a continuous attack with a single objective, i.e., achieving sexual gratification, so long as "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental" to any other. (*People v. Perez* (1979) 23 Cal.3d 545, 553-554 [section 654 did not preclude punishment for rape, sodomy and two oral copulation counts committed during a continuous 45- to 60-minute attack]; see also *Hicks*, at pp. 788 & fn. 4, 789 [section 654 "does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time' "; defendant was properly convicted of three sex offenses, two counts of oral copulation and one for sodomy, which occurred during the same sexual encounter]; *People v. Harrison* (1989) 48 Cal.3d 321, 335-338 [section 654 did not preclude multiple punishment where defendant committed three acts of forcible sexual penetration against a single victim during a continuous seven-to 10-minute attack; "no special treatment is to be afforded to a defendant under section 654 simply because he chose to repeat, rather than diversify or alternate, his many crimes" and "each of defendant's 'repenetrations' was clearly volitional, criminal and occasioned by separate acts of force" (italics omitted)].) This is because a "defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is

17

substantially more culpable than a defendant who commits only one such act." (*Perez*, at p. 553; see also *Harrison*, at p. 336 [summarizing *Perez*].)

" ' "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses not for more than one." [Citation.]' [Citation.] If the court makes no express findings on the issue, as happened here, a finding that the crimes were divisible is implicit in the judgment and must be upheld if supported by substantial evidence." (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.)

Thus, to decide if section 654 subjects a defendant to multiple punishment "requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives. [Citations.] At step one, courts examine the facts of the case to determine whether multiple convictions are based upon a single physical act. [Citation.] When those facts are undisputed . . . the application of section 654 raises a question of law we review de novo." (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.)

The trial court is " ' vested with broad latitude in making its determination' "; we review its decision " 'in the light most favorable to the respondent and presume the existence of every fact the trial court could

18

reasonably deduce from the evidence.' " (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.)

  2. *Analysis*

  Garcia contends no substantial evidence supports the court's implied finding that section 654 was inapplicable and thus did not preclude separate punishment for his convictions in counts 2 through 15. He argues: "On each of the three separate dates giving rise to [those counts], Garcia had but a single objective—to engage in sexual intercourse with . . . Doe. His touching and kissing of . . . Doe immediately prior to placing his penis in her vagina were simply acts to facilitate the intercourse. The acts were, thus, incidental to [his] ultimate goal." Garcia maintains that as a result he can only be sentenced once for each incident.

  Garcia does not challenge the evidence that before he engaged in intercourse with Doe on the occasions when Doe was 12, 13 and 15 years old, he fondled and kissed different parts of her body, including her mouth, neck, breasts, buttocks, thighs and legs. Specifically, when Doe was 12 and Garcia kept her home from school (counts 2 through 6), before engaging in intercourse he hugged Doe; caressed her back and body; fondled her breasts, buttocks, and thighs; and kissed her mouth, neck and breasts. During the glue-huffing incident (counts 7 through 11), Garcia kissed Doe's face, mouth and neck, as well as her breasts and legs. During the incident when Doe was 15 (counts 13 through 15), he kissed her on the mouth and fondled her, including her breasts, buttocks, and thighs under and over her clothes. On this last occasion, Garcia and Doe moved to the floor where Garcia resumed the intercourse. He also asked Doe to move on her hands and knees so he could again resume the intercourse facing her back.

19

The latter incident was plainly separated by breaks in and resumption of activity when Garcia and Doe left the bed to the floor and then again when they changed positions, reflecting a course of conduct divisible in time. This evidence gives rise to multiple punishment because Garcia was afforded the opportunity to reflect and renew his intent. (*People v. Kelly, supra*, 245 Cal.App.4th at p. 1136; *People v. Gaio, supra*, 81 Cal.App.4th at p. 935; see also *People v. Beamon, supra*, 8 Cal.3d at p. 639, fn. 11.) The fact he resumed the same act, intercourse, is of no moment. The "nature and sequence of the sexual 'penetrations' or offenses defendant commits is irrelevant for section 654 purposes. Whether defendant ends a break in the activity by renewing the same sex act (as here) or by switching to a new one [citation], the result under section 654 is the same. [¶] . . . section 654 does not preclude punishment for each of the sex offenses committed by defendant." (*People v. Harrison, supra*, 48 Cal.3d at p. 338.)

As for Garcia's claim that his fondling and kissing facilitated the intercourse, we disagree that the evidence permits such a conclusion. None of those acts were "part of the [intercourse]." (*People v. Perez, supra*, 23 Cal.3d at p. 553 [distinguishing case where removal of victim's underclothing was essentially part of the rape].) Rather, they were separate and distinct acts that were "not incidental to or the means by which [the rapes were] accomplished." (*Ibid.*) Garcia's conduct in kissing and fondling Doe was not necessary to his commission of the intercourse. We thus conclude there is substantial evidence to support the court's conclusion that Garcia harbored multiple, independent objectives in engaging in the acts.

## DISPOSITION

Garcia's sentence is vacated. The matter is remanded for resentencing to allow the trial court to exercise its discretion in determining whether to sentence Garcia to a full consecutive term on count 19 under Penal Code section 667.6, subdivision (c) and consider the impact of amended section 654 on Garcia's sentence. After resentencing, the court shall prepare an amended abstract of judgment and forward a certified copy to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

21